**WEISS v. LOS ANGELES BROAD-CASTING CO., Inc., et al.**

No. 4456.

District Court, S. D. California,
Central Division.

April 1, 1946.

A. L. Wirin and J. B. Tietz, both of Los Angeles, Cal., for plaintiff.

Edward D. Neuhof, of Los Angeles, Cal., for defendant.

YANKWICH, Judge.

The motion of the defendants to dismiss the amended complaint heretofore argued and submitted, is now decided as follows: The said motion to dismiss the complaint is hereby granted and the said cause is dismissed without leave to amend.

A study of the problem ever since it came before me under the original complaint, filed May 14, 1945, has led me to the conclusion that the plaintiff has no claim and cannot state a claim "upon which relief can be granted." Federal Rules of Civil Procedure, Rule 12(b) (6), 28 U.S.C.A. following section 723c.

Unlike the first complaint, the present one denominated "Amended Complaint for Damages for Unlawful Censorship of Political Candidate", states more clearly the legal grounds upon which the plaintiff's claim is bottomed. Jurisdiction is sought to be invoked either under Section 41(1) (a) of 28 U.S.C.A., or under Section 41(8) of 28 U.S.C.A. The claim of jurisdiction is tied to the provision of Section 315, Title 47 U.S.C.A. I do not think jurisdiction can be sustained under Section 41(1) (a), 28 U.S.C.A., because, assuming that the rights asserted by the plaintiff arise under "the Constitution or laws of the United States", the complaint, in addition to showing that the matter so arises, must state that the matter in controversy is in the jurisdictional minimum. See my opinion in Al-

len v. Clark, D.C.Cal., 1938, 22 F.Supp. 898, and my more recent opinion in Troy Laundry Co. v. Lockwood, D.C.Cal., 1945, 63 F. Supp. 384, 386, and cases cited therein.

There is an allegation of damage of $4,000. But the other facts alleged in the complaint and the censored material attached to it show that, assuming that a valuable right has been interfered with, it is not of a character which can be estimated in dollars and cents. Clearly, a person who is a candidate for mayor in a city of the size of Los Angeles upon the ticket of a minority party (Communist), cannot allege, with the degree of certainty required by the decisions discussed by me in Troy Laundry Co. v. Lockwood, supra, the money damage which she suffered by reason of the censoring of a portion of one speech. This is especially true when we consider the nature of the paragraphs censored. One of them charged that a certain labor group was selling labor votes to the then President of the United States, the then Mayor and another candidate. It is hard to understand how one can be damaged by being deprived of the opportunity of making such statement on the air. But the other censored portions of the broadcast indicate even more clearly that the allegation of damage cannot be in the sum alleged. For they consisted of the advocacy by the plaintiff of the candidacy of one of the candidates for council in one of the city's election districts. Grant that it was a friendly and comradely gesture for the plaintiff to espouse the cause of another candidate, how can she be damaged in any sum that can be legally approximated by being deprived of the opportunity to express such advocacy in one radio address?

Counsel for the plaintiff assert that it matters not whether the injury is evaluated exactly, that in cases where jurisdiction has been entertained, the rights violated have been measured variably from $100 to $10,000. The answer, of course, is that, as the United States District Courts are courts of limited jurisdiction, and as the Judicial Code in Section 37, 28 U.S.C.A. § 80, makes it our duty to inquire, at all times, into jurisdiction, we cannot entertain it when it is apparent from the com-

plaint and the exhibits attached to it that the general allegation of damage is not adequate and cannot be made so. The cases referred to in the two decisions previously cited fully sustain this view.

Jurisdiction claimed under Section 41(8) is independent of the amount involved.

■ We grant that radio is interstate commerce, and properly regulated as such by the Congress. It is questionable whether a provision such as Section 315, would apply in a case like this where the broadcast was evidently over a local station for local purposes.

■ However, a study of the section leads me to the conclusion that its guaranty against censorship was purely for administrative guidance and that, while its breach might be subject to sanctions by the Federal Communications Commission on complaint of the person against whom censorship has been exercised, it does not give any right which is enforceable in this court, either on the theory of breach of contract, or as violative of a right guaranteed by the laws of the United States. The recent case of McIntire v. Wm. Penn Broadcasting Co., 3 Cir., 1945, 151 F.2d 597, while not conclusive, is very persuasive. There the plaintiffs sought recovery upon the ground that the action of the radio station in withdrawing certain religious programs constituted violation of the guaranty of free speech under the First Amendment and of the Sherman (15 U.S.C.A. §§ 1-2) and Clayton Anti Trust Acts (15 U.S. C.A. § 15). But the clear implication of the opinion and my own conclusion is that guarantees of this type are directed either at encroachment on private rights by public·agencies, such as the civil rights statutes (18 U.S.C.A. § 52; and see Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330) or, in case of an interdict of the type here involved (Sec. 315, Title 47 U.S.C.A.) that they are standards of conduct, the violation of which are cognizable only through the administrative procedure of the body licensing the broadcaster.

Hence the conclusion already stated.

Formal order of dismissal to be prepared by counsel for the defendant.